UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-20896-MOORE/Elfenbein

*In re*

**ANDREY GRIGORYEVICH GURIEV**,

        Applicant,

**Pursuant to 28 U.S.C. § 1782 for
Judicial Assistance in Obtaining
Evidence for Use in a Foreign Proceeding**.
_____/

## ORDER AFTER DISCOVERY HEARING

**THIS CAUSE** is again before the Court on Applicant Andrey Grigoryevich Guriev's Notice of Hearing (the "Notice"), in which Applicant alerted the Court that the Parties required the Court's assistance with four discovery disputes: (1) Whether Respondent 777 Partners, LLC has asserted any objections to production, and if so, whether its right to object has been waived; (2) Whether any potential privilege objections have been waived or, if not, whether and by when Respondent must produce a privilege log; (3) Whether Respondent has any obligations in responding to the subpoena under Federal Rule of Civil Procedure 45; and (4) Whether Respondent should be compelled to complete production by a date certain.  *See* ECF No. [15] at 1.  Respondent submitted additional materials for the Court's consideration, *see* ECF No. [17], and the Court held an initial hearing on these discovery issues on October 30, 2025 (the "First Hearing"), *see* ECF No. [13].

At the First Hearing, Applicant made an Oral Motion to Compel Better Responses to the Rule 45 Subpoena ("Motion to Compel"), ECF No. [20], which the Court granted in part for the reasons stated on the record and memorialized in a separate order.  *See* ECF No. [21].  The Court

took under advisement the remaining issues on the Motion to Compel, ECF No. [20], which are the subject of this Order, and in doing so, it ordered Applicant and Respondent to submit supplemental briefing on the following issues: (1) the applicability, if any, of the crime-fraud exception to this discovery dispute; (2) whether Respondent waived its right to assert the attorney-client privilege over responsive documents; (3) what authority, if any, allows the Court to dictate how and through whom Respondent fulfills its obligation to produce materials in response to the subpoena; and (4) relatedly, what authority, if any, allows Counsel for Respondent to enter an appearance limited solely to participating in selected discovery hearings.  *See* ECF No. [21] at 2–3.

Both Parties submitted the required briefing, *see* ECF No. [22]; ECF No. [28], and the Court held a second hearing on the remaining issues on the Motion to Compel, ECF No. [20], on November 14, 2025 (the "Second Hearing"), *see* ECF No. [26].  At the Second Hearing, the Court heard from the Parties on the applicability of the crime-fraud exception and the Court's authority to dictate how and through whom Respondent fulfills its obligation to produce materials in response to the subpoena, including which Party should bear any associated production costs.[1] Because of an upcoming proceeding in the foreign litigation, the second issue — how Respondent must fulfill its obligation to produce materials in response to the subpoena and who must pay for the production — requires urgent resolution.[2]  Having considered the supplemental briefs, the

---

[1] The Court did not address whether Respondent waived its right to assert the attorney-client privilege over responsive documents because Applicant withdrew that issue in its supplemental brief. *See* ECF No. [22] at 2 n.1. Similarly, the Court did not address whether Respondent's counsel can enter an appearance limited solely to participating in selected discovery hearings because Respondent's counsel represented in its supplemental brief that he "will continue to represent Respondent 777 in this matter in its utmost unless relieved by Court order," *see* ECF No. [22] at 14, 19, and confirmed at the Second Hearing that Respondent is no longer seeking to limit its counsel's appearance.

[2] Given the time sensitivity of the production and this Order, the Court has not undertaken a recitation of the background facts discussed at the First and Second Hearings.  At these multi-hour hearings, Applicant's

2

arguments at both Hearings, and the record as a whole, the Court now decides that issue but leaves for a separate Order the applicability of the crime-fraud exception.[3]

I.     **LEGAL STANDARDS**

"For purposes of discovery, a party may subpoena information from a nonparty to litigation." *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020). To that end, Rule 45 "authorizes the issuance of a subpoena duces tecum seeking the production of documents (or other materials) from a nonparty." *Bailey Indus., Inc. v. CLJP, Inc.*, 270 F.R.D. 662, 666 (N.D. Fla. 2010); *see also* Fed. R. Civ. P. 45(a)(1)(A)(iii). Indeed, a "subpoena duces tecum is the only way to compel a non-party to produce documents or other materials." *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 295 F.R.D. 517, 520 (N.D. Fla.), *R. & R. adopted*, 981 F. Supp. 2d 1207 (N.D. Fla. 2013).

Even so, Rule 45 protects non-parties by allowing them to object. *See* Fed. R. Civ. P. 45(d)(2)(B). Like any other "person commanded to produce documents or tangible things," a non-party "may serve on the party or attorney designated in the subpoena a written objection," but any "objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." *See* Fed. R. Civ. P. 45(d)(2)(B). "If an objection is made" and the Court overrules it, the order compelling production "must protect a person who is neither a party nor a

---

counsel provided the Court with abundant detail involving the background of the underlying proceedings in the United Kingdom, 777 Partners' involvement in those proceedings as a litigation funder, and information about multiple proceedings that have been filed against 777 Partners or its principals since then, including a lawsuit filed by the Securities and Exchange Commission and two federal indictments. Applicant's submissions document the foregoing information in great detail. *See* ECF Nos. [15] and [22].

[3] At the conclusion of the Second Hearing, the Court required the Parties to meet and confer about the specific documents on the privilege log that should be submitted for an in-camera review, allowing the Parties to submit two to three documents as a sample from each of the four categories that Applicant identified. 777 Partners has since separately submitted those documents for in-camera review. The issue involving the applicability of the crime-fraud exception to the documents on the privilege log will be the subject of a separate order.

3

party's officer from significant expense resulting from compliance." *See* Fed. R. Civ. P. 45(d)(2)(B)(ii); *Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co.*, No. 12-CV-81397, 2016 WL 1658765, at *7 (S.D. Fla. Apr. 26, 2016) ("Under Rule 45, when a non-party is going to incur significant expense from compliance with the subpoena and that non-party has timely objected on those grounds, the Court's order must protect the non-party from significant expense resulting from compliance.").

"Failure to timely file a written objection to a subpoena will generally result in a waiver of the right to object to enforcement of the subpoena and of the right to recover costs of production." *Sun Cap.*, 2016 WL 1658765, at *7. "However, in unusual circumstances and for good cause, the failure to act timely may not bar consideration of objections." *Cook v. Palmer, Reifler & Assocs.*, No. 16-CV-673-J-39JRK, 2019 WL 5697230, at *2 (M.D. Fla. Nov. 4, 2019) (citation omitted). "Unusual circumstances have been found where" counsel for the non-party and counsel for the subpoenaing party "were in contact concerning" the non-party's "compliance prior to the time the" non-party "challenged the legal basis for the subpoena." *Id.* (quotation marks omitted); *see also Miami-Dade Cnty. v. Johnson Controls, Inc.*, No. 10-CV-20881, 2011 WL 1548969, at *3 (S.D. Fla. Apr. 21, 2011) (declining to deem a non-party's right to object waived when it emailed objections to party "within twenty-days from the date of service of the subpoena and on the return date listed on the subpoena").

Rule 45 also "protects the subpoena recipient by requiring the issuer to 'take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.'" *Jordan*, 947 F.3d at 1329 (quoting Fed. R. Civ. P. 45(d)(1)); *see also Great Am. Ins. Co. v. Veteran's Support Org.*, 166 F. Supp. 3d 1303, 1310 (S.D. Fla. 2015); Fed. R. Civ. P. 45(d)(1) ("The court for the district where compliance is required must enforce this duty and impose an appropriate

sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply."). The "intention of Rule 45 is to protect disinterested non-parties from incurring significant expense in complying with a subpoena," as it would be unfair to require such expense for a case in which a non-party has no interest. *See Sun Cap.*, 2016 WL 1658765, at \*7. But that protection is unwarranted if a non-party is not truly disinterested. *See id.*; *Culliver v. Ctr. for Toxicology & Env't Health LLC*, No. 21-CV-4942-MCR-GRJ, 2022 WL 475185, at \*4 (N.D. Fla. Feb. 16, 2022); *In re First Am. Corp.*, 184 F.R.D. 234, 242 (S.D.N.Y. 1998) (explaining that a non-party's production "expenses should not be awarded" because the non-party "was not the quintessential innocent, disinterested bystander").

For those reasons, despite "the required protection from significant expense, a non-party can be required to bear some or all of its expenses where the equities of a particular case demand it." *See Sun Cap.*, 2016 WL 1658765, at \*7 (alteration adopted, quotation marks omitted). "Courts have used a balancing approach to examine the equities of each particular case in order to determine how much cost to shift from the non-party to the discovering party, including whether the non-party actually has an interest in the outcome of the case, whether the non-party can more readily bear its cost than the requesting party, and whether the litigation is of public importance." *Id.* (quotation marks omitted); *see also In re Hornbeam Corp.*, No. 14-CV-24887, 2019 WL 5106768, at \*3 (S.D. Fla. Sept. 27, 2019). This inquiry typically focuses on the first factor. *See, e.g., Sun Cap.*, 2016 WL 1658765, at \*7; *Hornbeam*, 2019 WL 5106768, at \*3 (noting the subpoenaing party's "argument focuses exclusively on the first of these factors").

"As to the first factor, when a party from whom documents are sought is not a classic disinterested non-party, the court can order that the non-party produce the documents at its own expense." *Sun Cap.*, 2016 WL 1658765, at \*7 (citation modified). While neither the Eleventh

5

Circuit nor this District has yet defined exactly what it means to be a "classic disinterested non-party," courts in this District, this Circuit, and beyond have identified characteristics that may factor into the analysis.  Taken as a whole, those characteristics can be "encapsulate[d]" this way: "An interested non-party is an entity that does not have an actionable right at issue in the litigation, but has a significant, underlying connection to the case and, typically, some sort of financial or reputational stake in the litigation's outcome." *See Alabama Aircraft Indus., Inc. v. Boeing Co.* (*Alabama Aircraft II*), No. 11-CV-03577-RDP, 2016 WL 6892113, at *5 (N.D. Ala. Oct. 17, 2016) (citation omitted), *R. & R. adopted*, No. 11-CV-03577-RDP, 2016 WL 6897798 (N.D. Ala. Nov. 22, 2016).  Individually, some of those characteristics are:

(1) Whether the "non-party is involved in litigation arising out of the same facts" as the case in which the subpoena issued, *see Sun Cap.*, 2016 WL 1658765, at *7 ("Other district courts have held that where a non-party is involved in litigation arising out of the same facts of a case, the non-party is not a truly disinterested party for purposes of awarding costs.");

(2) Whether the non-party "coordinated" with any party when filing the motion to shift production costs, *see id.* ("The Non–Parties' close relationship with [the plaintiff] is further evident from the fact that the Non–Parties' counsel coordinated with [the plaintiff's] counsel to file the instant Motion and consented on behalf of the Non–Parties to their joinder in the Motion.");

(3) Whether the non-party "will be reimbursed" for its production costs by a party, *see id.* ("Regardless of the outcome of this Order, the Non–Parties will be reimbursed by [the plaintiff].), or has itself "borne the costs of document production" and will receive "any costs recovered," *see Hornbeam*, 2019 WL

5106768, at *3 ("It was represented at the May 6, 2019, hearing that the Subpoena Respondents, not Intervenors, have borne the costs of document production and that any costs recovered would go to Subpoena Respondents. Again, while not determinative, this undermines [the party's] insistence that [the non-party's] interest is so intermingled with the Intervenors as to make him an 'interested' non-party.");

(4) Whether the non-party has a "personal interest in the outcome of the case," *see id.* ("On balance, the Court is not persuaded that the relationship between [the non-party] and [the potential targets of the anticipated foreign litigation] demonstrates his personal interest in the outcome of the case."); *Culliver*, 2022 WL 475185, at *4 ("The courts view Rule 45's prohibition against unduly burdening a non-party through a different lens when the non-party is not truly disinterested."); *Siltronic Corp. v. Emps. Ins. Co. of Wausau*, No. 11-CV-1493-ST, 2014 WL 991822, at *2 (D. Or. Mar. 13, 2014) ("Although [the non-party] may have an interest in the accuracy of its coding, that is not the same as an interest in the outcome of this case.");

(5) Whether the non-party is a target of pending or future litigation, *see Hornbeam*, 2019 WL 5106768, at *3 ("Applicant has declined to identify [the non-party] as a target of its anticipated foreign suit, which, while not determinative, weighs against a finding that he has an actual interest.");

(6) Whether the non-party was involved either in the underlying acts that gave rise to the lawsuit, *see Culliver*, 2022 WL 475185, at *4 ("Rule [45] 'was not intended as a mechanism for entities which stand to benefit from certain

litigation outcomes to evade discovery costs arising from their involvement in the underlying acts that gave rise to the lawsuit.'" (quoting *Cornell v. Columbus McKinnon Corp.*, Case No. 13-CV-2188-SI, 2015 WL 4747260, at *5 (N.D. Cal. Aug. 11, 2015))); *id.* ("[C]ost-shifting [is] not appropriate where [the] non-party was intimately involved in the underlying events." (citing *Bell Inc. v. GE Lighting, LLC*, Case No. 14-CV-12, 2014 WL 1630754, at *13 (W.D. Va. Apr. 23, 2014)), or in a party's "affairs during the periods relevant to the" lawsuit, *see Alabama Aircraft II*, 2016 WL 6892113, at *5 ("[I]t is easy for the undersigned to conclude that TCP is an interested non-party, as it has a significant, underlying connection to the case, namely its intimate involvement in [the plaintiff's] affairs during the periods relevant to the instant case." (quotation marks omitted));

(7) Whether the non-party could have anticipated that its involvement in the underlying acts that gave rise to the lawsuit might reasonably spawn some litigation and discovery, *Culliver*, 2022 WL 475185, at *4 (The "fact that the nonparty was 'substantially involved in the underlying transaction and could have anticipated that its involvement might reasonably spawn some litigation, and discovery' was a circumstance weighing against shifting costs for compliance with Rule 45 subpoena." (alteration adopted) (quoting *Tutor–Saliba Corp. v. United States*, 32 Fed. Cl. 609, 610 n. 5 (1995)));

(8) Whether the non-party shares "corporate officers" with a party, *see id.* (A "non-party's sharing of corporate officers with the defendants . . . rendered it interested." (citing *Wells Fargo Bank, N.A. v. Konover*, 259 F.R.D. 206, 207

8

(D. Conn. 2009)); *Alabama Aircraft II*, 2016 WL 6892113, at *5 (Non-party "exercised a certain level of influence over" the plaintiff's "decisions and actions due to its control of numerous seats on" the plaintiff's "Board of Directors."); or the non-party's corporate officers are "intimately involved in the conduct of the litigation," *see Ala. Aircraft Indus., Inc. v. Boeing Co.* (*Alabama Aircraft I*), No. 11-CV-03577-RDP, 2016 WL 9781825, at *5 (N.D. Ala. Feb. 25, 2016) ("[I]t is not difficult for the undersigned to conclude that KAII is an interested non-party; indeed, . . . its corporate officers . . . appear to have been intimately involved in the conduct of the litigation.");

(9) Whether the non-party has a "financial stake" in a transaction underlying the lawsuit, *see Culliver*, 2022 WL 475185, at *4 (A non-party's "financial stake in an underlying transaction" rendered it interested. (citing *Konover*, 259 F.R.D. at 207)); in a party to the lawsuit, *see Alabama Aircraft II*, 2016 WL 6892113, at *5 (The non-party "had a financial stake in [the plaintiff] in the form of a loan," which supported "an 'interested' designation."); or in the lawsuit itself, *see Alabama Aircraft I*, 2016 WL 9781825, at *5 ("[I]t is not difficult for the undersigned to conclude that KAII is an interested non-party; indeed, it . . . stands to receive an overwhelming percentage of any recovery the litigation trust is able to obtain.");

(10) Whether the non-party is funding the lawsuit, *see id.* ("[I]t is not difficult for the undersigned to conclude that KAII is an interested non-party; indeed, it is responsible for funding the litigation trust.");

(11) Whether the non-party has anything "to gain from its outlays in [production]

9

compliance cost[s]," *see Culliver*, 2022 WL 475185, at *4 ("Rule 45 is aimed at protecting persons who are disinterested and thus have little to gain from their outlays in compliance cost." (citation modified));

(12)   Whether the non-party has the power to control the scope of litigation and discovery, *see id.* (Rule 45 "was meant to protect those who are powerless to control the scope of litigation and discovery and should therefore not be forced to subsidize an unreasonable share of the costs of a litigation that does not concern them." (citation modified));

(13)   Whether the non-party's relationship with a party impacts a discovery dispute, *see Alabama Aircraft II*, 2016 WL 6892113, at *5 (Non-party's "relationship with" the plaintiff "is now central to this case's most significant remaining discovery dispute," which further buttresses the conclusion that it "constitutes an interested non-party.").

But even if, after considering these characteristics, a court concludes that a non-party is not entirely disinterested, the court retains "discretion to apportion some of the costs to the propounding party." *See Hornbeam*, 2019 WL 5106768, at *3. Courts that have decided to split production costs between a subpoenaing party and a non-party have done so where the costs were "significant." *See id.* ("Ultimately, the Court finds that some portion of the Subpoena Respondents' costs, if significant, will be shifted to Applicant."); *cf. Johnson Controls*, 2011 WL 1548969, at *4 (requiring subpoenaing party to "bear the reasonable costs associated with" non-party's production when the non-party demonstrated it would incur "substantial costs" to comply). "Whether a cost is 'significant' necessarily relates to the nature of the case and the parties' respective financial situations." *Hornbeam*, 2019 WL 5106768, at *3 (quoting *Siltronic*, 2014 WL

10

991822, at *1).

If a court decides to apportion production costs between a subpoenaing party and a responding non-party, the court can implement a procedure to "ensure" that the party receives "the documents to which" it is "entitled and that the subpoena recipients are protected against unreasonable financial burden and expense resulting from compliance." *See Cont'l 332 Fund, LLC v. Albertelli*, No. 17-CV-41-FTM-38MRM, 2019 WL 4671007, at *2 (M.D. Fla. July 28, 2019); *Johnson Controls*, 2011 WL 1548969, at *4. Such a procedure can include: (1) requiring the subpoenaing party to "advance payment of reasonable expenses" the responding non-party has already "incurred as a result of compliance with the subpoena," *Albertelli*, 2019 WL 4671007, at *2; (2) requiring the subpoenaing party to "reimburse" the non-party "at the regular hourly salary rate for each employee who is reasonably and necessarily involved in the production of the requested documents," *Johnson Controls*, 2011 WL 1548969, at *4; (3) requiring the non-party to advise the subpoenaing party of "the particular tasks and the persons who will perform those tasks to enable" it "to determine whether to narrow the scope of its request" before "incurring the expense," *see id.*; or (4) allowing the subpoenaing party to "pay the amount it deems reasonable" and the non-party to "file a motion with the Court to award an additional amount" if the "parties are unable to agree on the reasonableness of the expense incurred after production has been made, *see id.*; *Albertelli*, 2019 WL 4671007, at *2 (requiring the non-party to deliver an invoice to the subpoenaing party that contains "sufficient detail to permit the Court to determine the reasonableness of the attorney and non-attorney hours expended, the hourly rates or wages charged, support for the attorney and non-attorney rates charged, descriptions of the tasks performed by each timekeeper, and a detailed itemization of the costs incurred" in case the parties file a renewed motion for costs). Whatever procedure a court imposes, the focus is on ensuring

that the production costs are "reasonable." *See Albertelli*, 2019 WL 4671007, at *2; *Johnson Controls*, 2011 WL 1548969, at *4.

Finally, just as it has the authority to craft a procedure for apportioning production costs, a court also has authority to require that whatever "protocol" a non-party follows in gathering responsive documents "be reasonable," particularly when the production involves electronically stored information. *See Zarfati v. Artsana USA, Inc.*, No. 24-CV-21372, 2025 WL 50373, at *2–3 (S.D. Fla. Jan. 8, 2025). That authority includes the power to review protocols proposed by both sides and determine which "more closely aligns with the objectives" of the Federal Rules and this District's Local Rules. *See id.* at 2–5. It also includes the powers to modify a protocol or any part of it by rejecting or adding provisions as necessary. *See id.* And if the non-party does not make a proper production with whatever protocol it or the court chooses, the court has the authority to sanction the non-party or its counsel. *See* Fed. R. Civ. P. 45(g) ("The court for the district where compliance is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.").

## II.  DISCUSSION

Distilling the arguments from the First and Second Hearings, the remaining issues on the Oral Motion to Compel, ECF No. [20], and associated production issue can be addressed by answering three questions: (1) did Respondent waive its right to object to the subpoena by failing to timely serve its objections; (2) must Respondent use a specific method or overseer when responding to the subpoena; and (3) who must bear the costs of Respondent's production? Applicant argues that Respondent has waived its right to object and that, because Respondent's in-house counsel may have a personal stake in issues related to the subpoena production and Respondent is not a classic disinterested party, outside counsel should oversee the production and

Respondent should fund it. Respondent, on the other hand, argues that it timely (if informally) asserted its objections and that its interests (if any) are not significant and that it has the right to choose who oversees its document production, so its in-house counsel can oversee the production, and Applicant should pay for it.

Starting with the first question, the Court finds Respondent's slight delay in objecting did not waive its right to object. Although Applicant served the subpoena on Respondent through a process server, it is clear to the Court that there was confusion as to whether Respondent was effectively served because a member of Respondent's IT team, not a corporate officer, accepted service of the subpoena. *See* ECF No. [15-2] at 15-24. Once the subpoena made its way to someone who could act on it (as early as September 3, 2025), Respondent's in-house counsel, Molly Wander, began communicating with Applicant's counsel by phone and over email about the subpoena (as early as September 5, 2025). *See* ECF No. [15-2] at 16-21. After receiving the initial list of ESI search terms from Applicant's counsel, on September 19, 2025, Ms. Wander noted the high number of responsive hits and inquired whether Applicant desired to modify the search terms, *see* ECF No. [15-2] at 39, and on September 26, 2025, Ms. Wander reiterated the difficulties associated with the production given understaffing at 777 Partners, *see* ECF No. [15-2] at 36-37.[4] In the days that followed, Applicant's counsel and Ms. Wander continued to discuss search terms; and in doing so, Applicant's counsel added numerous search terms to its list at which point (September 30, 2025) Ms. Wander objected to the unduly burdensome nature of the requested search terms. *See* ECF No. [15-2] at 26-36. While 777 Partners' objections were informal via email and in telephone calls, they certainly put Applicant on notice of the objected-

---

[4] Although the record is unclear as to what was said, it appears that, as early as September 12, 2025, Ms. Wander flagged that she intended to make objections to the subpoena in an upcoming telephone call with Applicant's counsel. *See* ECF No. 17-1] at 2.

13

to issues. That is enough to preserve Respondent's right to object. *See Cook*, 2019 WL 5697230, at *2 (noting that good cause for failure to timely object can be found where counsel for the non-party and counsel for the subpoenaing party were in contact concerning the non-party's compliance before the non-party challenged the legal basis for the subpoena); *Johnson Controls*, 2011 WL 1548969, at *3.

Moving to the second question, the Court finds Respondent is not required to use a specific method or overseer when responding to the subpoena. As Respondent notes in its Supplemental Brief, the "Court's authority to determine how a subpoena recipient fulfills its obligations to produce documents, though not unlimited, is robust." ECF No. [28] at 14; *see also Zarfati*, 2025 WL 50373, at *2–5. But while the Court has the authority to require Respondent to use a reasonable protocol, the Court declines to exert that authority here to force Respondent's outside counsel to undertake the ESI review and production versus allowing Respondent to use an outside vendor with Ms. Wander, as its in-house counsel, overseeing the production. Respondent's outside counsel has confirmed he has already "engaged in a diligent review of documents" and "will continue to fulfill" his "duties of loyalty to both the Court and the client" unless he is "relieved by Court order." *See* ECF No. [28] at 14, 16, 19. And at the Second Hearing, Ms. Wander confirmed that, should she be allowed to oversee the production, she would file a motion to appear *pro hac vice* in this action. Applicant's counsel, for his part, confirmed he "finds no reason for concern that any Order issued by this Court would be intentionally disregarded by counsel for [Respondent] in these proceedings." *See* ECF No. [22] at 19. And as Applicant's counsel recognized at the Second Hearing, should Respondent not make a proper production, the Court can sanction Respondent or its counsel. *See* Fed. R. Civ. P. 45(g).

Accordingly, the Court finds that Respondent may use whatever reasonable protocol it

14

chooses to fulfill its subpoena obligations, including selecting whomever it deems most appropriate to oversee the production.[5]  If Respondent elects to have its in-house counsel, Ms. Wander, oversee its production, however, Ms. Wander **SHALL** enter an appearance and file a motion for admission *pro hac vice* **no later than December 1, 2025** so that the Court will have sanctioning power over her performance of those duties.  If Respondent elects to have its outside counsel oversee the production, Ms. Wander does not need to appear or file a *pro hac vice* motion.

Finally, as to the third question, the Court finds that the equities of this case support a conclusion that Applicant and Respondent should share the costs of Respondent's production.  *See Sun Cap.*, 2016 WL 1658765, at *7.  Looking to the first and most important of the three factors courts generally evaluate to determine what the equities of a case demand — whether the non-party has an interest — the Court concludes that Respondent is not the classic disinterested party. *See id.*  Indeed, Respondent has a significant, underlying connection to the case because it has an interest in the foreign litigation for which Applicant seeks to use the subpoenaed documents.  *See Alabama Aircraft II*, 2016 WL 6892113, at *5.

Specifically, Respondent was involved in funding the litigation that spawned the foreign lawsuit currently pending in the United Kingdom, which is one characteristic courts have found supports a conclusion that a non-party is interested for subpoena production cost purposes.  *See Alabama Aircraft I*, 2016 WL 9781825, at *5; *Culliver*, 2022 WL 475185, at *4.  For that reason, Respondent could have anticipated that its involvement in the underlying acts that gave rise to the UK lawsuit might reasonably spawn some litigation and discovery, which "weigh[s] against shifting costs for compliance with [a] Rule 45 subpoena."  *See Culliver*, 2022 WL 475185, at *4. Additionally, Respondent may be a target of future litigation brought by Applicant, which is

---

[5] The Parties may, of course, discuss an ESI protocol amongst themselves so that there is an understanding as to how Respondent will conduct the search and production of ESI.

another point in support of requiring Respondent to bear at least some of the production costs. *See Hornbeam*, 2019 WL 5106768, at *3. On balance, it appears to the Court that Respondent has more of a personal interest here than a truly disinterested party would, so the Court declines to shift all of Respondent's production costs to Applicant. *See Sun Cap.*, 2016 WL 1658765, at *7; *Culliver*, 2022 WL 475185, at *4.

Given the breadth of Applicant's subpoena requests, however, the Court also declines to impose on Respondent all the production costs. The subpoena at issue includes requests for multiple document custodians and more than one hundred word or phrase searches, *see* ECF Nos. [1-4], [15-2] at 33-36, which is almost guaranteed to result in production costs that are significant and substantial, *see Hornbeam*, 2019 WL 5106768, at *3; *Johnson Controls*, 2011 WL 1548969, at *4. Indeed, Respondent has provided a cost estimate for the review and production of 50,000 documents from an outside vendor for the three custodians it has identified, which does not include additional custodians that Applicant requested or all documents that hit on the proposed search terms, in the amount of $78,746, *see* ECF No. 17-1] at 43, and an estimate for the same document production by Respondent's outside counsel in the amount of $231,965, *see* ECF No. [28-3]. That amount of work justifies shifting some of the production costs to Applicant even though Respondent is not a traditional disinterested party.[6] *See Hornbeam*, 2019 WL 5106768, at *3. Under these circumstances, Respondent should not be required to solely shoulder this expense.

Accordingly, it is **ORDERED** that Applicant's Oral Motion to Compel, **ECF No [20]**, is

---

[6] The Court notes that the second factor of the equities analysis also favors shifting production costs to Applicant. *See Sun Cap.*, 2016 WL 1658765, at *7 (noting that courts should consider "whether the non-party can more readily bear its cost than the requesting party"); *see also In re Hornbeam Corp.*, 2019 WL 5106768 at *3. As noted in Respondent's Supplemental Brief, which was not disputed at the Second Hearing, Applicant is a billionaire whereas Respondent appears to be in significant financial distress. *See* ECF No. [28] at 18.

**GRANTED in part and DENIED in part** and Respondent's Objections relating to the cost of production are **SUSTAINED in part and OVERRULED in part**. To ensure Applicant receives the documents to which it is entitled and Respondent is protected against unreasonable financial burden and expense, the Court finds that Applicant **SHALL be responsible for 65%** of the costs of Respondent's compliance with the subpoena and that Respondent **SHALL be responsible for 35%** of the costs. *See Albertelli*, 2019 WL 4671007, at *2; *Johnson Controls*, 2011 WL 1548969, at *4. The Court encourages Applicant and Respondent to work with one another and confer about a streamlined method, including the potential narrowing of custodians and search terms, that will ensure a speedy production of documents to Applicant and a reduced expense to Applicant and Respondent. Respondent **SHALL** produce documents to Applicant on a rolling basis with at least one production per week and **SHALL** complete its document production no later than **December 10, 2025**. To ensure the document production is moving forward expeditiously, the Court will hold a discovery status conference with the Parties over Zoom on **December 3, 2025 at 10 a.m.** at which time the Parties will advise the Court on the progress of the discovery production. Counsel, parties, or members of the public can attend the discovery status conference using either of the following methods:

1. Copying and pasting the following Zoom Link into a web browser: https://www.zoomgov.com/j/16109660856?pwd=UW5LVWEvcm1xdHR3ZlpnM2VFQVBRQT09; or

2. Going to https://www.zoomgov.com and entering Meeting ID 16109660856 and Passcode 309878.

CASE NO. 25-CV-20896-MOORE/Elfenbein

**DONE AND ORDERED** in Chambers in Miami, Florida on November 24, 2025.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All counsel of record